**David Alan LEARY, Jr., Petitioner,**

v.

**David A. GARRAGHTY, Warden, Respondent.**

No. Civ.A. 00–1657–AM.

United States District Court, E.D. Virginia.

June 8, 2001.

---

David Alan Leary, Jr., petitioner pro se.

Thomas Drummond Bagwell, Richmond, Virginia, for respondent.

*MEMORANDUM OPINION*

CACHERIS, District Judge.

THIS MATTER is before the Court on Respondent's Motion to Dismiss. Petition-

er, David Alan Leary, Jr. ("Leary"), a Virginia inmate proceeding *pro se,* filed this habeas corpus petition pursuant to 28 U.S.C. § 2254 attacking his state court convictions for two counts of aggravated malicious wounding, two counts of use of a firearm in commission of a felony and one count of shooting into an occupied dwelling. On March 26, 2001, respondent filed a Motion to Dismiss. On April 9, 2001, petitioner responded to the Motion to Dismiss and this matter is now ripe for disposition. For the reasons that follow, the Court will grant respondent's motion and dismiss this petition.

## I. Procedural Background

On January 5, 1995, Leary was indicted on two counts of aggravated malicious wounding, two counts of use of a firearm in commission of a felony and one count of shooting into an occupied dwelling in the Circuit Court of the City of Norfolk. It was undisputed at trial that the victims in this case, Rena A. Smith ("Smith") and Linwood L. Edwards ("Edwards"), were shot and wounded by Leary.

During the two day jury trial, both victims recounted through their testimony essentially the same facts regarding the shooting. On or about November 10, 1994, Edwards was at Smith's house eating dinner. During dinner, Smith received a phone call from Michelle Olivieri ("Olivieri"), Leary's sister, indicating that she was coming over to Smith's house. Approximately ten minutes later, Leary knocked on Smith's door. Smith answered the door and asked the whereabouts of Olivieri. Leary informed Smith that Olivieri was in the car and would be there in a minute. Leary followed Smith to the kitchen where Edwards was finishing dinner.

While in the kitchen, Leary then noticed Edwards's .44 caliber handgun on the kitchen counter and asked Edwards if he could hold it to feel its weight. Leary felt then gun and quickly returned it to Edwards who placed it back on the counter. Leary informed Edwards and Smith that he had recently purchased a similar gun, a .41 caliber Ruger Blackhawk. At this point, Edwards excused himself and went to the bathroom. Smith went back to the front door to look and see what was delaying Olivieri. Leary followed Smith from the kitchen. While Smith was looking out the front door, Leary grabbed Smith by the neck and told her to "get down" numerous times. Smith testified that Leary was holding Edwards's gun. Edwards, upon hearing the shouting, came out of the bathroom to investigate the disturbance. As Edwards walked towards the front door from the bathroom, Leary shot Edwards in the lower abdomen. Leary then forced Smith and the wounded Edwards into a bathroom and closed the door. Leary then went upstairs in the house. Smith informed Edwards that she thought Leary was going to kill them both and that she was going to make a "run for it" and get help. Smith left the bathroom and encountered Leary by the front door. Leary shot Smith several times with Edwards's .44 caliber handgun and with Smith's .38 caliber handgun that she kept in a bedside table upstairs in her bedroom. As a result of the shooting, Smith's arm was amputated and she suffered serious injuries to her spleen, large intestine, liver and stomach.

When Leary testified, he told essentially the same story as Smith and Edwards up until the point that Edwards excused himself and went to the bathroom. Leary testified that Smith left the kitchen and went to the front door. Smith then called Leary to the front door. Smith allegedly pointed her .38 caliber handgun at Leary and asked "who did you bring with you?"

Leary testified that Smith seem agitated and appeared high on drugs. Leary further testified that Smith had previously told him she was in trouble with some drug dealers and feared that they were going to harm her. Smith kept pointing the gun at Leary and kept asking "who did you bring with you?" Leary then testified he backed into the kitchen and picked up Edwards's gun. Leary returned to the living room, pointed Edwards's gun at Smith and told her to put down her gun down. Smith complied with Leary's instructions and put the gun on the floor. Leary apparently took Smith's gun and placed it in the waistband of his pants. At this point, Edwards came out of the bathroom. Leary testified he was not sure whether Edwards had a weapon in his hand. As Edwards approached Leary from less than ten feet away, Leary told Edwards to stop. When Edwards did not stop walking towards him, Leary testified he merely intended to fire a warning shot between Edwards's legs. Instead, he shot Edwards in the lower abdomen. Leary then placed both Smith and Edwards in the bathroom for his own protection. He then went upstairs to call the police. He indicated that he had remembered that there was a phone upstairs from his previous visits to Smith's house. When he could not locate the phone, he went back downstairs.

When Leary got back downstairs, Smith attacked him. During their struggle, she reached for her gun that was still in Leary's waistband. Several shots went off from both the .44 and .38 caliber guns and Smith was struck at least twice. Leary also testified that during the struggle with Smith, he noticed Edwards was standing in the bathroom door. Apparently fearing that Edwards would attempt to aid Smith, Leary fired a shot at the wall near the bathroom door to scare Edwards back into the bathroom. Leary then fled the scene in his car. While in his car, Leary called his sister Olivieri, who was also his attorney, for legal advice on what to do next. Olivieri told Leary that he should not call the police, go home, put the weapons in a safe place and do nothing until she called him back. Leary was arrested the next day.

After deliberating for less than two hours, the jury returned a verdict of guilty on all 5 counts. On August 23, 1995, Leary was sentenced to fifty-one (51) years of incarceration, among other penalties.

Initially, Leary did not pursue a direct appeal to the Court of Appeals of Virginia, because his trial counsel did not file a timely notice of appeal. On September 22, 1997, Leary was granted leave to file a delayed appeal with the Court of Appeals of Virginia. In his appeal to the Court of Appeals of Virginia, Leary raised the following claims:

1. The trial court erred in admitting evidence over trial counsel's objections;

2. The trial court erred when it allowed the admission of a .41 caliber Ruger Blackhawk found near the scene of the shooting months after the incident;

3. The trial court erred when it refused to include the lesser-included offense instruction for unlawful wounding on the count dealing with the shooting of Rena A. Smith;

4. The trial court abused its discretion when it denied Leary's motion for a mistrial;

5. The trial court erred when it denied Leary's motion that jeopardy attached after an initial mis-trial was declared;

6. The trial court erred when it admitted into evidence pictures of the crime scene because they were highly prejudicial; and,

7. The trial court erred when it included the instruction for aggravated malicious wounding in the shooting of Linwood Edwards because the evidence produced at trial did not support such an instruction.

On April 24, 1998, the Court of Appeals of Virginia denied Leary's delayed appeal on the merits. *See Leary v. Virginia,* Record No. 2536–97–1, at 1–8 (Va.Ct.App. Apr. 24, 1998) (unpublished). Leary then filed a petition for direct appeal with the Supreme Court of Virginia, which denied his petition on January 13, 1999. *See Leary v. Virginia,* Record No. 982194 at 1 (Va. Jan. 13, 1999). The Supreme Court of Virginia also denied a petition for rehearing on February 26, 1999. *See Leary v. Virginia,* Record No. 982194 at 1 (Va. Feb. 26, 1999).

On February 2, 2000, Leary sought a writ of habeas corpus from the Circuit Court of the City of Norfolk claiming that:

1) His trial counsel, Arthur C. Ermlich, Jr. was constitutionally ineffective because:

A. Trial counsel made factual misstatements during opening arguments that prejudiced Leary during trial;

B. Trial counsel failed to utilize exculpatory evidence;

C. Trial counsel failed to subpoena witnesses to testify on Leary's behalf;

D. Trial counsel failed to adequately and effectively prepare for trial; and,

E. Trial counsel cumulative efforts failed to meet the Sixth Amendment's right to effective representation.

On May 25, 2000, the Circuit Court of the City of Norfolk dismissed Leary's habeas corpus petition. On June 5, 2000, Leary filed an appeal of his habeas petition

with the Supreme Court of Virginia, which denied his petition for appeal on September 20, 2000.

On October, 2000, Leary filed the instant federal habeas corpus petition pursuant to 28 U.S.C. § 2254 claiming:

1) The trial court erred when it refused Leary's motion for a lesser-included offense instruction of unlawful wounding in the count charging Leary with the aggravated malicious wounding of Lena A. Smith;

2) He was denied effective assistance of counsel in violation of his Sixth Amendment right to counsel because

A. Trial counsel made factual misstatements during opening arguments that prejudiced Leary during trial;

B. Trial counsel failed to utilize exculpatory evidence;

C. Trial counsel failed to subpoena witnesses to testify on Leary's behalf;

D. Trial counsel failed to adequately and effectively prepare for trial; and,

E. Trial counsel cumulative efforts failed to meet the Sixth Amendment's right to effective representation.

On June 16, 2000, respondent filed a Motion to Dismiss the petition. On August 9, 2000, petitioner responded to the Motion to Dismiss and this matter is now ripe for disposition.

## II. Exhaustion of Claims

The threshold inquiries for a federal court reviewing a petition under 28 U.S.C. § 2254 are whether the petitioner has exhausted his claims before the appropriate state courts and whether these claims are procedurally barred by a state rule. It appears from the record that petitioner has appropriately presented his claims to the Supreme Court of Virginia and has not been barred by an independent and adequate state ground. For these reasons,

we proceed to review petitioner's claims on the merits.

## III. Standard of Review

When a petitioner seeks a writ of habeas corpus, a federal court must first apply the appropriate standard of review. When a state court has addressed the merits of a claim raised in a federal habeas petition, the federal court cannot grant the petition unless the state court's adjudications are contrary to, or an unreasonable application of, clearly established federal law, or are based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d).[1] The United States Supreme Court recently clarified this standard, holding that "contrary to" and "unreasonable application of" were independent clauses, either of which could permit granting the writ. *See Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 1519, 146 L.Ed.2d 389 (2000). The Court stated that the "contrary to" clause requires a federal court to grant the writ if the state court decision "arrive[d] at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Id.,* 120 S.Ct. at 1523.

The Court also held that under the "unreasonable application" clause, the writ should be granted if the federal court finds that the "state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* The Court held that this stan-

dard of reasonableness is an objective one. *See id.* at 1521–22. Further, "a federal habeas court may not issue the writ simply because the court concludes in its independent judgement that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 1529. Therefore, to grant the petitioner's writ, this Court would have to conclude that the Supreme Court of Virginia acted unreasonably or contrary to federal law when it ruled on petitioner's claims.

## IV. Analysis of Claims

### Claim 1

In his first claim, Leary asserts that the trial court erred when it refused his motion for a lesser-included offense instruction of unlawful wounding in the count charging him with the aggravated malicious wounding of Lena A. Smith. The respondent argues that "the propriety of jury instructions is a matter of state law not cognizable in a federal petition for writ of habeas corpus." Def.'s Mot. to Dismiss at 7.

In a non-capital case, it is unclear in the Fourth Circuit whether or not the failure of a state court judge to give an instruction on a lesser-included offense presents a federal question reviewable in a habeas petition. At least one court in the Fourth Circuit felt compelled in light of *Hopper v. Evans,* 456 605 (1962), to review on the merits a petitioner's claim that he was entitled to a lesser-included instruction in

---

1. 28 U.S.C. § 2254(d) provides:

 (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

 (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of United States; or
 (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

a non-capital case. *See Simpson v. Garrison*, 551 F.Supp. 618, 621 (W.D.N.C.1982), *aff'd*, 705 F.2d 445 (4th Cir.1983). A recent unpublished opinion of the United States Court of Appeals for the Fourth Circuit, however, leaves substantial doubt as to whether the holding in *Simpson* is still valid.[2] Thus, it is unclear[3] to this Court what the current state of the law is on this issue in the Fourth Circuit.

A review of decisions from other courts of appeals established that there is no consensus on this question. "The Fifth, Tenth and Eleventh Circuits[4] have held that failure to instruct on the lesser-included offense **does not** present a federal constitutional question cognizable under habeas corpus law." *Robertson v. Hanks*, 140 F.3d 707, 710 (7th Cir.1998) (emphasis added). The First, Sixth, Seventh and Eighth Circuits[5] use the rigorous "fundamental miscarriage of justice test". *See id.* The fundamental miscarriage of justice test states that a "due process violation occurs only when the failure to give such an instruction in a non-capital case amounts to so fundamental a defect as to cause 'a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure.'" *Tata v. Carver*, 917 F.2d 670, 671 (1st Cir.1990). The Second and Ninth Circuits[6] have declined to adopt a rule on this issue since such a rule "'would involve the announce-ment of a new rule,' and the holding under *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), precludes consideration of the issue." *Robertson*, 140 F.3d at 710. Only the Third Circuit has held that a federal question exists when state courts fail to instruct juries on lesser-included offenses in non-capital cases. *See Vujosevic v. Rafferty*, 844 F.2d 1023, 1027 (3d Cir.1988).

■ Thus, the majority of courts of appeals hold that either there is no cognizable federal question presented when a habeas petitioner claims that a state court failed to instruct on a lesser-included offense in a non-capital case, or that a federal question exists only to prevent a fundamental miscarriage of justice. In the instant action, Leary has not demonstrated that the failure to give the lesser-included instruction violated the "rudimentary demands of fair procedure." More importantly, because the rule is not clearly established in the Fourth Circuit, this Court is precluded from considering the claim under *Teague* and 28 U.S.C. § 2254(d)(1) because it would require the retroactive application of a rule not clearly established. Accordingly, this claim must be dismissed.

### Claim 2

In his second claim, Leary alleges that he was denied effective assistance of coun-

---

**2.** *See Robinson v. North Carolina Attorney General*, 238 F.3d 414, 414 (4th Cir.2000) (unpublished). In *Robinson*, the Fourth Circuit held that it could not find that a state trial court is constitutionally required to instruct a jury on a lesser-included offense in a non-capital case because that would require "the enunciation and retroactive application of a new rule in violation of § 2254(d)(1) and *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989)." *Id.*

**3.** Unpublished opinions are not binding precedent in the Fourth Circuit. *See* Fourth Circuit Local Rule 36(c).

**4.** *See Valles v. Lynaugh*, 835 F.2d 126, 127 (5th Cir.1988); *Chavez v. Kerby*, 848 F.2d 1101, 1103 (10th Cir.1988); *Perry v. Smith*, 810 F.2d 1078, 1080 (11th Cir.1987).

**5.** *See Tata v. Carver*, 917 F.2d 670, 671 (1st Cir.1990); *Bagby v. Sowders*, 894 F.2d 792, 797 (6th Cir.1990) (*en banc*); *DeBerry v. Wolff*, 513 F.2d 1336, 1338 (8th Cir.1975).

**6.** *See Jones v. Hoffman*, 86 F.3d 46, 48 (2d Cir.1996); *Accord Turner v. Marshall*, 63 F.3d 807, 818–19 (9th Cir.1995).

sel in violation of his Sixth Amendment rights. In considering an ineffective assistance of counsel claim, a court must determine (1) "whether, in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance," *Strickland v. Washington*, 466 U.S. 668, 690, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (defining ineffective assistance of counsel as falling below an objective standard of reasonableness; specifying a strong presumption of competence and deference to attorney judgment), and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052. "The petitioner must show both deficient performance and prejudice; the two are separate and distinct elements of an ineffective assistance claim." *Spencer v. Murray*, 18 F.3d 229, 232–33 (4th Cir. 1994). Moreover, "[i]f there is no prejudice, a court need not review the reasonableness of counsel's performance." *Quesinberry v. Taylor*, 162 F.3d 273, 278 (4th Cir.1998). Finally, "[j]udicial scrutiny of counsel's performance must be highly deferential," *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052, and the Court must "presume that challenged acts are likely the result of sound trial strategy." *Spencer*, 18 F.3d at 233.

**Claim 2(A)**

■ Leary asserts that trial counsel made factual misstatements during opening arguments that prejudiced him during trial. Specifically, Leary asserts that trial counsel argued that the gun was accidentally fired when Linwood Edwards was shot. Leary claims that trial counsel knew, or should have known, that Leary intended to testify that he intentionally fired a warning shot near Edwards, but accidentally shot him in the lower abdo-

men. Furthermore, Leary states that trial counsel never corrected the errors he made in his opening arguments. As a result of counsel's alleged misstatements, Leary claims that his credibility was damaged in the eyes of the jury.

The Tenth Circuit has held that trial counsel's failure to make any opening statement, in of itself, was not ineffective assistance of counsel. *See Nguyen v. Reynolds*, 131 F.3d 1340, 1350 (10th Cir. 1997). Further, defense counsel's insulting comments about his own client in closing arguments did not constitute ineffective assistance of counsel because the comments did not render the trial fundamentally unfair. *See Burris v. Farley*, 845 F.Supp. 636, 659 (N.D.Ind.1994). "The essential question," in any ineffective assistance counsel claim, "is whether better lawyering would have produced a different result." *Washington v. Hofbauer*, 228 F.3d 689, 702 (6th Cir.2000).

In the instant case, Leary was convicted on the basis of the two victims' nearly identical testimony that Leary attacked them without justification. The nature of counsel's factual mistake and the purported truth, while substantial in Leary's opinion, were similar. Both "versions" indicated that the shooting of Edwards was accidental and not a malicious act. Furthermore, it is a sound trial strategy not to bring attention to a mistake for fear that correcting it will bring more attention to the issue. *See Bennett v. Angelone*, 92 F.3d 1336, 1349 (4th Cir.1996). In any event, it is unlikely that even if trial counsel had made a perfect opening argument, the outcome of the case would have been any different because of the victims' testimony. Accordingly, the Court cannot conclude that the Supreme Court of Virginia acted unreasonably or contrary to federal law in dismissing this claim. Thus, this claim must be dismissed.

## Claim 2(B)

 Leary also asserts that his trial counsel was constitutionally ineffective because counsel failed to review relevant exculpatory evidence. Specifically, Leary alleges that trial counsel failed to review the victims' medical records which might have supported his assertion that the victims were both high on crack cocaine the day of the shooting. Leary believes that this evidence would have enhanced his credibility with the jury and strengthened his claim that he was acting in self defense. However, Leary does not indicate in his petition if, in actuality, any drug tests were performed on the victims on the night of the shooting, nor does he include any copies of medical records indicating that the victims were in fact high on any drugs. Rather, Leary simply infers in his petition that positive drug tests were contained in the victims' medical records.

Even if the Court were to assume that the medical records indicated that the victims were high at the time of the shooting and that Leary's trial counsel's failure to review the records was objectively unreasonable conduct, Leary must demonstrate that he was prejudiced by this inaction. The question then becomes, in light of these medical records indicating the victims were high on drugs, is there a reasonable probability that the outcome of the trial would have been different. We conclude that it would not.

Leary's trial came down to a classic two-on-one credibility clash. Too many facets of Leary's testimony do not make sense. For example, Leary testified that when he fired a warning shot at Edwards, Edwards was less than ten feet away walking towards him. Despite being ten feet away, Leary could not tell whether or not Edwards had a weapon in his hand. Furthermore, Leary testifies that he was in a life and death struggle with Smith, but that he had the presence of mind to fire a warning shot at the wounded Edwards to keep him the bathroom. Thus, the Court finds that there is not a reasonable probability that the outcome would have been different if medical records did indicate that the victims were high on drugs. Accordingly, the Court cannot conclude that the Supreme Court of Virginia acted unreasonably or contrary to federal law in dismissing this claim. Therefore, this claim must be dismissed.

## Claim 2(C)

 Leary next asserts that his trial counsel was constitutionally ineffective for failing to subpoena a crucial witness to his defense. Specifically, Leary states that trial counsel did not subpoena Olivieri, his sister, who would have testified that she saw the victims doing drugs on the day of the shooting. Leary also states that Olivieri would have testified that Smith had stated on previous occasions that whenever she pulled a gun, she intended to use it. Leary believes this testimony would have bolstered his assertion that he reasonably feared for his life when Smith pointed a gun at him.

Leary indicates in his petition that Olivieri initially agreed to testify voluntarily. However, as the trial approached, Leary feared that she would not testify because she was in a drug treatment program in Florida. Leary requested that his trial counsel issue a subpoena to insure her appearance. Apparently, trial counsel never issued a subpoena for Olivieri.

Even if the Court were to assume *arguendo* that counsel's failure to secure Leary's sister's involuntary testimony with a subpoena was objectively unreasonable conduct, Leary must still demonstrate a reasonable probability that the outcome of the trial would have been different.

As Leary's sister, Olivieri certainly would have been viewed by the jury as biased in favor of her brother. Olivieri's credibility and memory would likely have been questioned because she was a drug addict who had been in and out of substance abuse facilities. More importantly, Olivieri's testimony would have shed little light on key issues at the trial. As noted above, Leary indicates that his sister would have testified that Smith had stated on previous occasions that if she pulled her gun she intended to use it. The question for the jury was not whether Leary felt scared and was justified in defending himself when Smith pointed a gun at him, but rather the pivotal question was whether Smith ever pulled a gun on Leary in the first place.

As for Olivieri's proposed testimony about the victim's alleged drug use, the Court concludes that this proposed testimony would not have changed the result of the trial because of Leary's testimony and the testimony of the two victims. Accordingly, the Court cannot conclude that the Supreme Court of Virginia acted unreasonably or contrary to federal law in dismissing this claim. Therefore, this claim must be dismissed.

### Claims 2(D) & (E)

Leary's two remaining claims are essentially the same. Leary claims that his trial counsel's overall preparation for trial was deficient and that these claims taken cumulatively demonstrate that he was prejudiced by this objectively unreasonable conduct. In other words, Leary asserts that trial counsel's cumulative mistakes are enough to satisfy *Strickland's* prejudice prong even if individually they do not.

"The *Strickland* analysis focuses on particular errors and the harm which flows from them." *Johnson v. Nagle,* 58 F.Supp.2d 1303, 1351 (N.D.Ala.1999). "*Strickland* makes it clear that, to prove a claim of ineffective assistance of counsel, a habeas petitioner must identify a specific error and show prejudice flowing from that error." *Id.* "Nothing in *Strickland* suggests that a combination of several errors can be prejudicial when none, standing alone, would be sufficient to authorize relief." *Id.* at 1352. More importantly, the Fourth Circuit has expressly held that ineffective assistance of counsel claims, like claims of trial court error, must be reviewed individually, rather than collectively. *See Fisher v. Angelone,* 163 F.3d 835, 852 (4th Cir.1998). In other words, if individual claims fail the two-pronged *Strickland* test, they cannot be aggregated in an attempt to satisfy *Strickland.* Accordingly, the Court cannot conclude that the Supreme Court of Virginia acted unreasonably or contrary to federal law in dismissing this claim. Therefore, this claim must be dismissed.