.Artie G. THOMPSON, Appellant,

v.

Warden Sam P. GARRISON, Central Prison, Raleigh, North Carolina and State of North Carolina, Appellees.

No. 74–1483.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 7, 1975.

Decided May 29, 1975.

George K. Walker, Associate Professor of Law, Wake Forest University, Winston-Salem, N. C. [court-appointed counsel], and Christopher S. Crosby and Edwin L. Gavin, II, Law Students, appearing pursuant to Rule 13, for appellant.

Richard N. League, Asst. Atty. Gen. (James H. Carson, Jr., Atty. Gen. of North Carolina, on brief), for appellees.

Before CRAVEN, BUTZNER and WIDENER, Circuit Judges.

BUTZNER, Circuit Judge:

Artie Gilbert Thompson, a North Carolina prisoner, appeals from a judgment denying his petition for a writ of habeas corpus without a federal evidentiary hearing. On the basis of the record in his state post-conviction proceeding, the district court rejected his claim that his conviction had been procured by perjured testimony. Thompson contends the district court should have held a full evidentiary hearing and granted immunity to the alleged perjurer in order to develop the facts. We find no error and affirm the judgment.

In May 1972 Thompson was convicted of a murder committed during a housebreaking.* The only prosecution witness to give a complete account of the crime was Larry Sings, a participant in the burglary, who testified that Thompson lingered in the house after the other burglars left and that later Thompson admitted shooting a resident of the house who was upstairs. Sings was corroborated by another witness who heard Thompson admit the murder in order to silence the victim, who he feared recognized him.

Thompson and Sings are imprisoned together. In August 1972 Sings submitted to prison officials an affidavit in which he claimed that:

"Prior to the time of trial, in a meeting with the district attorney, I was told that if I did not give testimony that would aid the prosecution of Mr. Thompson, I myself would be charged with the offense. Through fear of my own wellbeing I agreed to the terms and upon taking the stand gave a false statement to be entered in the record as evidence against one, Artie G. Thompson, the defendant at said hearing . . . I wish it to be known that my statement under oath was a lie and that I cannot truthfully bear witness against Mr. Artie G. Thompson."

The affidavit does not specify which parts of Sings' testimony were false, nor does it charge that the district attorney knew that Sings would testify falsely.

Soon after Sings executed the affidavit, Thompson brought a state post-conviction proceeding at which he sought to have his conviction vacated because of Sings' alleged perjury. Sings, though, refused to testify for fear of self-incrimination. At the hearing Thompson denied having known Sings before his trial. He testified that Sings told him while in jail that Edward Clyburn, a friend named Cline, and Sings had broken into the house; that Clyburn had done the shooting; and that when a police officer threatened Sings with the gas chamber, Sings and Clyburn decided to frame Thompson rather than implicate Cline. The state judge denied the writ, but he was sufficiently concerned about the possibility that perjury had been committed to assure that he would recommend executive clemency if Thompson passed a polygraph test. Thompson failed the test.

Thompson contended that his state hearing was inadequate because Sings refused to testify. He also claimed that the district court could not rely on the state judge's findings because they were based in part on the inadmissible results of the polygraph. Thompson requested a full hearing in federal court at which Sings would be given immunity and

* State v. Thompson, 280 N.C. 202, 185 S.E.2d 666 (1972).

compelled to testify under 18 U.S.C. § 6002. The district court, however, ruled that the state hearing had been "thorough and fair" and denied the petition on the basis of the record.

When public officers connive at or knowingly acquiesce in the use of perjured evidence, their misconduct denies a defendant due process of law. Napue v. Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959); Mooney v. Holohan, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791 (1935). Recantation of testimony alone, however, is insufficient to set aside a conviction on the ground that the due process clause has been violated. A habeas corpus petitioner must show that the prosecutor or other government officers knew the testimony in question was false in order to prevail. Hysler v. Florida, 315 U.S. 411, 418–21, 62 S.Ct. 688, 86 L.Ed. 932 (1942); Harrison v. Boles, 307 F.2d 928, 933 (4th Cir. 1962).

The North Carolina post-conviction proceeding, in which Thompson was represented by counsel, developed an adequate record for the district court's determination of this issue. Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). Although Sings refused to testify on Thompson's behalf, his affidavit and Thompson's testimony of what Sings had told him were admitted. Both versions of Sings' alleged decision to commit perjury attribute it to his desire to save himself or his friends from threats made by state officials, but neither charges that the officials knew that Sings' testimony about the murder would be untrue.

Although Thompson was the only witness to testify in the state post-conviction proceeding, the district court was not required to accept his assertion that Sings' testimony was perjured or to infer that state officials knew it was. Thompson did not testify in the murder trial, but' his present claims that he did not take part in the burglary and did not even know Sings before his arrest were contradicted by the testimony of witnesses in the murder trial who have not recanted. In addition, Sings' affidavit attributes his false testimony to the prosecutor's threats, while Thompson testified Sings had told him a police officer had made the threats. The inconsistencies and contradictions disclosed by the entire state record should be viewed in light of our admonition that a recantation, particularly by an accomplice, should be received skeptically. See United States v. Johnson, 487 F.2d 1278 (4th Cir. 1973).

Thompson's insistence that the district judge should have guaranteed Sings immunity and compelled him to testify by invoking 18 U.S.C. § 6002 is based on a misconception of the law. A district judge is not authorized to initiate immunity. The statute places this responsibility on the United States Attorney, who can act only after receiving approval from the Attorney General, his deputy or an assistant. 18 U.S.C. § 6003. The function of the district court is limited to determining whether the government's request for immunity complies with the statutory procedure. Ullmann v. United States, 350 U.S. 422, 431–34, 76 S.Ct. 497, 100 L.Ed. 511 (1956); In re Kilgo, 484 F.2d 1215 (4th Cir. 1973).

Finally, we find no merit in Thompson's contention that the federal court cannot utilize the state habeas corpus record because the state judge relied on the report of the polygraph test. While the formal order of the state court was entered after the results of the test were known, the transcript discloses that before the test was taken, the judge ruled from the bench that Thompson was not entitled to the writ. The test was not a part of the state proceedings but was a condition of the court's extrajudicial offer to intercede for executive clemency if the results showed that Thompson was telling the truth.

The judgment is affirmed.