838 F.2d 1210
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Michael Dean KELLER, Petitioner-Appellant,
v.
Rae H. McNAMARA, Director of D.O.C., Respondent-Appellee.
 No. 87-7267.
 United States Court of Appeals, Fourth Circuit.
 Submitted: Oct. 27, 1987.
Decided: Feb. 1, 1988.
 
 Michael Dean Keller, appellant pro se.
 Rufus L. Edmisten, Attorney General, Barry Steven McNeill, Office of Attorney General, for appellee.
 Before DONALD RUSSELL, K.K. HALL, and JAMES DICKSON PHILLIPS, Circuit Judges.
 PER CURIAM:
 
 
 1
 Michael Dean Keller seeks to appeal the district court's denial of his 28 U.S.C. Sec. 2254 petition for habeas corpus relief. He alleges that his North Carolina conviction for the second degree murder of Edward Greene is invalid because the state's use of the prior recorded testimony of Jackie Robinette and Jerry Lyn Morrison violated his constitutional rights.
 
 
 2
 Keller was twice tried and convicted of murdering Greene. His first conviction was reversed because the jury had not been given an instruction on second degree murder. Robinette, Keller's accomplice, testified during Keller's first trial pursuant to a plea bargain. In return for Robinette's truthful testimony about Keller's role in the Greene brothers' deaths, the state allowed Robinette, who had been indicted for two counts of first degree murder, to plead guilty to two counts of voluntary manslaughter. The state also agreed to recommend consecutive sentences of twenty years on each count and not to prosecute Robinette on pending drug charges in Catawba County.
 
 
 3
 At Keller's second trial, Robinette refused to testify. He did not offer any explanation for his refusal, nor was he questioned about the reason for his refusal. The trial court informed Robinette that his refusal to testify would cause the state to move to set aside the guilty pleas to manslaughter and to try him for first degree murder. Robinette stated that he nevertheless would not testify. The trial court then ruled that Robinette was unavailable and that the state could therefore use Robinette's testimony from Keller's first trial.
 
 
 4
 In Ohio v. Roberts, 448 U.S. 56, 74 (1980), the Supreme Court held that a witness is not "unavailable" for sixth amendment confrontation clause purposes unless the prosecution has made a good faith effort to obtain the witness's presence at trial. " 'The lengths to which the prosecution must go to produce a witness ... is a question of reasonableness.' " Id. (quoting California v. Green, 399 U.S. 149, 189 n. 22 (1968)).
 
 
 5
 In this case, the prosecution did in fact secure Robinette's "presence" at Keller's second trial. In the face of Robinette's last-minute refusal to testify, the only other step that the prosecution could have taken would have been to ask the court to hold Robinette in contempt. The prosecutor acted reasonably in not taking this step. The trial court told Robinette that if he did not testify, the prosecutor would move to set aside the guilty pleas and to try him for first degree murder. Threatening to hold Robinette in contempt of court could hardly have been more coercive than threatening him with first degree murder charges. Threatening Robinette with incarceration would have had little effect because Robinette was already incarcerated and was serving a long sentence. In these circumstances it is highly unlikely that a contempt of court citation would have caused Robinette to testify, and the prosecutor did not act unreasonably in not making the futile gesture of asking the trial court to hold Robinette in contempt. Thus, Robinette's refusal to testify rendered him "unavailable" under Roberts. As the testimony also bears the "indicia of reliability" discussed in Roberts, 448 U.S. at 66, 73, it was admissible at Keller's second trial.
 
 
 6
 Keller also alleges that Robinette's testimony was perjured and claims that this perjury rendered his conviction unconstitutional. In March 1981, Robinette stated in an affidavit that the testimony he gave against Keller at Keller's first trial in November 1978 was false. He stated that he thought that his refusal to testify against Keller at the second trial would clear him and that he gave the false statement because he was informed that if he did not plea bargain and agree to testify against Keller, neither he nor his father would ever get out of jail. Robinette stated that his father was charged with 62 counts of selling and delivering heroin, PCP, and LSD. He does not state who coerced him into giving the allegedly perjured testimony.
 
 
 7
 Robinette's affidavit is insufficient to show that the prosecution knowingly used perjured testimony. Robinette states that he testified against Keller because of the threats that he and his father would receive severe sentences if he did not testify, but he does not allege that whoever made the threats of severe sentences knew that Robinette's testimony was false. In Thompson v. Garrison, 516 F.2d 986 (4th Cir.), cert. denied, 423 U.S. 933 (1975), this Court found similar allegations insufficient to show knowing use of perjured testimony. Id. at 987-88. In addition, "a recantation, particularly by an accomplice, should be received skeptically." Id. at 988. The district court correctly dismissed this claim.
 
 
 8
 Finally, Keller alleges that Morrison's testimony from Keller's first trial was improperly admitted at Keller's second trial because Morrison was not unavailable. The state, however, clearly made a good faith effort to secure Morrison's presence at Keller's second trial. Aside from mailing subpoenas to Morrison's last known address, the state's bureau of investigation agents interviewed his wife, his parents, his attorney, law enforcement officials in Alexander County, persons who lived in the Stoney Point area, and persons from Caldwell and Catawba Counties. Keller argued at trial that the state could have taken other measures to obtain Morrison's appearance. The state was not required to exhaustively investigate every conceivable lead, however, but only to make a reasonable, good faith effort to locate Morrison. It clearly did this, and Keller's claim that the state had not shown that Morrison was unavailable is without merit.
 
 
 9
 We therefore deny Keller's application for a certificate of probable cause and dismiss the appeal. We dispense with oral argument because the facts and legal arguments are adequately presented in the informal brief and record and oral argument would not significantly aid the decisional process.
 
 
 10
 DISMISSED.