Joseph Patrick PAYNE, Sr., Petitioner,

v.

Charles E. THOMPSON,
et al., Respondents.

No. 3:93–CV–530.

United States District Court,
E.D. Virginia,
Richmond Division.

June 6, 1994.

Ned Matthew Mikula, Rudy, Keown, Evans & Mikula, Chesterfield, VA, for petitioner.

Thomas Drummond Bagwell, Office Of The Atty. Gen., Richmond, VA, for respondents.

## MEMORANDUM

MERHIGE, District Judge.

This matter is before the Court on Joseph Patrick Payne, Sr.'s Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. Payne is held under penalty of death at the Mecklenburg Correctional Center as a result of his conviction on April 29, 1986, in the Circuit Court of Powhatan County on charges of capital murder. Payne filed the instant petition and an accompanying motion for evidentiary hearing on July 30, 1993. Respondent thereafter filed a motion to dismiss on September 24, 1993.

In the offense of conviction, Payne was found guilty of the March 3, 1985, murder of David Wayne Dunford. While Payne and Dunford were both inmates at Powhatan Correctional Center, Dunford was burned in his cell when an assailant padlocked his cell door, doused the cell with flammable liquid, and ignited it with matches. The Commonwealth's case against Payne rested largely on the testimony of another inmate and an alleged eyewitness—Robert Smith. After arriving at a verdict of guilty on April 29, 1986, the next day the jury fixed Payne's sentence at death. The Circuit Court pronounced the sentence of death on June 19, 1986.

On direct appeal to the Supreme Court of Virginia, Payne's conviction and sentence were affirmed. *Payne v. Commonwealth,* 233 Va. 460, 357 S.E.2d 500 (1987). On November 2, 1987, the United States Supreme Court denied Payne's petition for writ of certiorari. *Payne v. Virginia,* 484 U.S. 933, 108 S.Ct. 308, 98 L.Ed.2d 267 (1987). Payne's motion for rehearing on his petition for certiorari was also denied. 484 U.S. 1021, 108 S.Ct. 738, 98 L.Ed.2d 685 (1988).

In May, 1988, petitioner filed a habeas corpus petition in the Circuit Court for Powhatan County, and on December 6, 1990, the circuit court entered an order dismissing all issues raised by Payne with the exception of those regarding the use of perjured testimony and selected allegations of ineffective assistance of counsel. An evidentiary hearing on the remaining claims followed, and on February 6, 1992, the circuit court denied all of Payne's habeas corpus claims. The Supreme Court of Virginia denied Payne's petition for appeal on August 11, 1992. The United States Supreme Court denied Payne's petition for writ of certiorari on January 11, 1993. *Payne v. Thompson,* —— U.S. ——, 113 S.Ct. 1003, 122 L.Ed.2d 152 (1993).

The issues have been well briefed and are ripe for decision.

In the instant petition, Payne raises the following claims:

I. Petitioner's conviction was founded on perjured testimony.

II. Respondent knew or should have known that the testimony against petitioner was perjured.

III. Petitioner is actually innocent.

IV. Testimony against petitioner was obtained through inducements and threats not disclosed to the jury.

V. Petitioner was deprived of his right to testify in his own defense.

VI. Petitioner was deprived of his right to call witnesses in his defense.

VII. Petitioner's Fifth and Fourteenth Amendment rights were violated by improper prosecutorial remarks on petitioner's failure to testify.

VIII. Petitioner's due process rights were violated by improper prosecutorial comments shifting the Commonwealth's burden of proof.

IX. The Commonwealth improperly used the testimony of a psychiatrist who performed a pre-trial competency examination of petitioner.

X. The prosecution improperly used victim impact evidence from petitioner's prior murder conviction.

XI. The jury was improperly instructed on the function of mitigating evidence.

XII. Virginia's death penalty statute is unconstitutionally vague.

XIII. Petitioner's trial counsel was unconstitutionally ineffective in both the guilt and sentencing phases of trial.

XIV. Petitioner was unconstitutionally denied meaningful adjudication of his state habeas corpus petition.

The essential inquiry in this habeas corpus petition is whether Payne's confinement and sentence are in violation of the federal Constitution or laws. 28 U.S.C. § 2241(c)(3). In the interest of giving the state courts the first opportunity to consider the alleged constitutional errors in his conviction and sentencing, Payne is required to have exhausted all state court remedies. This requirement is strictly enforced. *See Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). This Court has defined exhaustion as generally demanding "that the essential legal theories and factual allegations advanced in federal court be the same as those advanced at least once to the highest state court." *Pruett v. Thompson,* 771 F.Supp. 1428, 1436 (E.D.Va.1991), *aff'd,* 996 F.2d 1560 (4th Cir.1993).

In addition to the exhaustion requirement, in Virginia no writ will be granted on the basis of any legal or factual claim the petitioner could have made previously, but did not. *See Slayton v. Parrigan,* 215 Va. 27, 205 S.E.2d 680 (1974), *cert. denied,* 419 U.S. 1108, 95 S.Ct. 780, 42 L.Ed.2d 804 (1975); Va.Code Ann. § 8.01–654(B)(2). This rule of procedural bar is triggered when the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on the procedural bar. *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). Also, the rule is given effect where a claim was never presented to the state court to begin with, and the applicable state rule would clearly bar consideration of the new allegations. *Bassette v. Thompson,* 915 F.2d 932, 937 (4th Cir.1990), *cert. denied,* 499 U.S. 982, 111 S.Ct. 1639, 113 L.Ed.2d 734 (1991).

It is well-established that, in order to avoid the effect of a procedural bar or default, the petitioner must show "cause and prejudice" for the default. *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). Cause may be established where a constitutional claim is "so novel that its legal basis is not reasonably available to counsel" at the time of default. *Reed v. Ross,* 468 U.S. 1, 16, 104 S.Ct. 2901, 2910, 82 L.Ed.2d 1 (1984). Cause may also exist where counsel is responsible for the default by virtue of ineffectiveness sufficient to meet the exacting standards established in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). With respect to prejudice, petitioner must show that alleged prejudicial errors "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady,* 456 U.S. 152, 170, 102 S.Ct. 1584, 1595, 71 L.Ed.2d 816 (1982) (original emphasis).

In light of the foregoing principles, the Court determines that petitioner's Claims VII, VIII, X, XI, XII are procedurally defaulted.[1] These claims were either found to be procedurally barred by the Virginia Supreme Court on direct appeal, 233 Va. 460, 357 S.E.2d 500 (1987), or were deemed defaulted in the circuit court's Order of December 6, 1990. As such, they may be considered by this Court upon a showing of cause and prejudice. However, petitioner having made no showing of cause and prejudice within the meaning of *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), the claims are not properly before the Court and must be dismissed.

In Claim I, Payne alleges that his due process rights under the Fifth and Fourteenth Amendments were violated in that his conviction was founded on the allegedly perjured testimony of Robert Smith. Payne

---

1. In its Order of December 6, 1990, the Circuit Court of Powhatan County stated: "The Court finds that the following claims in the hereinafter enumerated paragraphs are dismissed because they were not raised at trial and on appeal in violation of the principles enunciated in *Slayton v. Parrigan,* 215 Va. 27, 205 S.E.2d 680 (1974): Paragraphs 161–281."

A review of the *Petition* filed in the Circuit Court containing 281 allegations indicates that it effectively encompassed Claims VII, VIII, X, XI, XII in the instant Petition. However, as reflected in the trial transcript, no issue as to any of those Claims was raised during the trial.

argues that other eyewitnesses have testified that Smith himself committed the murder, and that directly after the murder Smith was heard bragging about having killed Dunford. Further, Payne submits, directly prior to testifying against Payne, Smith admitted he was lying in order to procure the deal the Commonwealth allegedly offered him for his testimony. And, although he later recanted, after Payne's trial Smith signed a sworn, notarized 16–page handwritten affidavit disavowing his testimony at trial.

Citing *Sanders v. Sullivan,* 863 F.2d 218 (2d Cir.1988), Payne contends that a state's failure to cure a conviction founded on perjured testimony by an essential prosecution witness violated due process. Substantial evidence indicating perjury by Smith, as well as other witnesses for the Commonwealth, combined with Smith's alleged reputation for untruthfulness, Payne asserts entitles him to habeas relief.

In Claim II, petitioner states that the Commonwealth knew or should have known that the testimony against Payne was perjured. Petitioner makes much of the alleged "critical mandate" on the part of the Department of Corrections to obtain a capital murder conviction in the Dunford murder so as to "send a signal" to other inmates. Relying on *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976) and *Napue v. Illinois,* 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959), Payne urges that due process requires that a conviction be set aside where it has been obtained through the state's knowing use of false evidence. Again, Payne states that Smith's "acknowledged history" of unreliability should have put the Commonwealth on notice that Smith may have been perjuring himself. *See United States v. Wallach,* 935 F.2d 445, 457 (2d Cir.1991), *cert. denied,* —— U.S. ——, 113 S.Ct. 2414, 124 L.Ed.2d 637 (1993).

Respondent moves to dismiss Claims I and II, arguing that both claims were rejected after a hearing in the habeas corpus proceeding in the circuit court. The circuit court's findings were affirmed by the Virginia Supreme Court in its Order of August 11, 1992. These findings are entitled to a presumption of correctness pursuant to 28 U.S.C. § 2254(d). Respondent submits that, after the plenary hearing in the circuit court, the habeas trial court concluded that Payne's witnesses were not credible such that the trial court could not have been plainly wrong in rejecting their testimony. Although respondent references Smith's inconsistent affidavits regarding the truth of his trial testimony, the Commonwealth points out that the state habeas court had ample opportunity to weigh the evidence at the hearing. Whereas the state habeas judge's findings are fairly supported by the record, respondent contends, the findings are entitled to a presumption of correctness. *See Marshall v. Lonberger,* 459 U.S. 422, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983); *Sumner v. Mata,* 455 U.S. 591, 102 S.Ct. 1303, 71 L.Ed.2d 480 (1982).

As an initial matter, the Court observes that Payne's Claims I and II essentially seek habeas corpus relief based on newly discovered evidence. Petitioner's habeas witnesses Phillips, Artis, and Clements each identified Smith as the murderer and each offered various reasons for failing, despite ample opportunity, to come forward previously with the information proffered at the habeas hearing. As the Fourth Circuit stated in *Stockton v. Commonwealth,* 852 F.2d 740 (4th Cir.1988), "[t]he grounds for habeas relief on the basis of newly discovered evidence are exceedingly narrow:

> When public officers connive at or knowingly acquiesce in the use of perjured evidence, their misconduct denies a defendant due process of law. Recantation of testimony alone, however, is insufficient to set aside a conviction on the ground that the due process clause has been violated. A habeas corpus petitioner must show that the prosecutor or other government officers knew the testimony in question was false in order to prevail."

*Id.* at 749, *quoting, Thompson v. Garrison,* 516 F.2d 986, 988 (4th Cir.) (citations omitted), *cert. denied,* 423 U.S. 933, 96 S.Ct. 287, 46 L.Ed.2d 263 (1975). In addition, "a state court finding that the government acted in good faith where defendant alleges he has been the victim of intentional or purposeful government misconduct, is entitled to a presumption of correctness." *Evans v. Thomp-*

*son,* 881 F.2d 117, 122 (4th Cir.1989) (citations omitted), *cert. denied,* 497 U.S. 1010, 110 S.Ct. 3255, 111 L.Ed.2d 764 (1990). This presumption means that "a federal habeas court [must] more than simply disagree with the state court before rejecting its factual determinations. Instead, it must conclude that the state court's findings lacked even 'fair support' in the record." *Id., quoting Marshall v. Lonberger,* 459 U.S. 422, 432, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983).

It is the Court's conclusion that, based on the transcript of the habeas hearing, the state court's determination that "no credible evidence was produced at the hearing to show that any prosecution witness perjured himself at trial or that the prosecution knowingly used perjured testimony," is fairly supported by the record. (H.R. at 772–73, 779, 782).[2] Accordingly, Claims I and II should be dismissed.

■ Payne's Claim III, requesting habeas relief based on actual innocence, must also be dismissed. Petitioner asserts that evidence developed after his trial persuasively establishes his actual innocence, and, in turn, Smith's guilt. Payne relies on the recent United States Supreme Court ruling in *Herrera v. Collins,* — U.S. —, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993), in arguing that his actual innocence warrants federal habeas relief. It is, however, the Court's reasoning in *Herrera,* and the Fourth Circuit's interpretation of that decision in *Spencer v. Murray,* 5 F.3d 758 (4th Cir.1993), that compel this Court to dismiss petitioner's claim as to actual innocence. "[A] claim of 'actual innocence' is not itself a constitutional claim, but instead a gateway through which a petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Herrera,* — U.S. at —, 113 S.Ct. at 862. Like the petitioner in *Spencer,* "the errors [Payne] points to … are errors of fact, not law." *Spencer,* 5 F.3d at 765.

Payne advances five allegations in support of his freestanding habeas claim based on actual innocence: (1) four eyewitnesses saw Smith, not Payne, commit the murder; (2) Smith recanted his testimony against Payne;

(3) Smith admitted to three separate witnesses that he, not Payne, had committed the murder; (4) Smith was given numerous undisclosed inducements in return for his testimony; and, (5) the prosecution knew Smith to be "a manipulative con man." In *Herrera,* the Court stated that "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state proceeding." *Herrera,* — U.S. at —, 113 S.Ct. at 860. The Court further explained, "[t]his rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution—not to correct errors of fact." *Id.* As in *Herrera* and *Spencer,* Payne's claim of actual innocence appears merely to assert factual innocence, and the Court concludes that the claim cannot meet the "extraordinarily high" threshold standard established by *Herrera* for such claims. *Id.,* — U.S. at —, 113 S.Ct. at 869.

■ In Claim IV, petitioner contends that he was denied due process when the Commonwealth failed to reveal certain inducements or threats made to witnesses which, if revealed, "could … in any reasonable likelihood have affected the judgment of the jury." *Giglio v. United States,* 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972). Payne maintains that the Commonwealth both failed to disclose to the jury an alleged promise to Smith of recommendation for an additional sentence reduction and the dismissal of criminal sodomy charges in return for his testimony against Payne. Payne further alleges undisclosed threats made by the Commonwealth against Smith and two other witnesses, Miller and Stiltoner, in order to coerce their testimony against Payne.

Respondent moves for dismissal of that Claim, arguing that the Circuit Court of Powhatan County found that "inmate Smith was never threatened by the Commonwealth or her agents and at no time was Smith offered or promised inducements by the

---

**2.** References to state habeas court proceedings are designated "H.R." References to sentencing proceedings at the state trial appear as "Sent. Tr."

Commonwealth that were not disclosed to the defense and revealed at trial." Order of February 6, 1992 at 2. Respondent urges that the habeas court's finding is entitled to a presumption of correctness under 28 U.S.C. § 2254(d).

Based upon a review of the transcript of the habeas proceedings, the Court is of the opinion that the habeas judge's findings against petitioner as to the nature of Smith's sentence reduction and the lack of evidence regarding dismissal of the sodomy charge are fairly supported by the record. (H.R. 763–771, 779–80). Claim IV will be dismissed.

 Payne asserts three Claims—V, VI, and XIII—the allegations of which either explicitly or implicitly seek to establish ineffective assistance of counsel in violation of his rights under the Sixth Amendment.[3] Respondent seeks dismissal of each claim alleging constitutional ineffectiveness.

Respondent's motion as to Claims V and VI is of simple resolution. In Count V, Payne complains that, through ineffective assistance of counsel he was deprived of his right to testify in his own defense. Payne characterizes the decision that he not testify as one made unilaterally by his trial counsel—Michael Morchower, Jean Colby and Donald Ford of Richmond. Contrary to petitioner's present contention of ineffectiveness, it is clear that the fact that he did not testify was the result of a strategic decision and recommendation made by his counsel and, albeit reluctantly, followed by Payne. The dynamic between Payne and his counsel regarding the issue raised in Claim V—that of Payne's own testimony—cannot be said to rise to the level of constitutional ineffectiveness as defined in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984).

In *Strickland*, the Court held:

The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

A reasonable probability is a probability sufficient to undermine confidence in the outcome.

466 U.S. at 694, 104 S.Ct. at 2068. Accordingly, the Supreme Court has established the inquiry as follows:

When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt. When a defendant challenges a death sentence such as the one at issue in this case, the question is whether there is a reasonable probability that, absent the errors, the sentencer— including an appellate court, to the extent it independently reweighs the evidence— would have concluded that the balance of aggravating and mitigating circumstances did not warrant death.

*Id.* at 695, 104 S.Ct. at 2068. Viewed in light of the foregoing standard, the Court is of the view that petitioner's Claim VI, alleging unconstitutional deprivation of his right to call witnesses in his defense, must also fail.

In examining whether counsel's performance was deficient, we examine whether counsel's performance was reasonable under prevailing professional norms. We conduct this review not by asking whether we would have defended petitioner in the same way, but instead with a deferential eye, and we presume that challenged acts are likely the result of a sound trial strategy.

*Spencer v. Murray*, 18 F.3d 229, 233 (4th Cir.1994) (citations omitted). Here, the allegations contained in Claim VI cannot withstand the strength of the presumption in favor of trial strategy—a presumption that is confirmed by Morchower's testimony at the habeas plenary hearing regarding witness strategy at trial. (H.R. 633–34, 636–39), and a fact substantiated by Petitioner in his testimony at the sentencing phase of his trial.

---

**3.** Although Counts V and VI of Payne's petition, alleging deprivation of his right to testify and of his right to call witnesses in his defense respectively, were not initially plead as ineffective assistance of counsel claims, in his opposition to respondent's motion to dismiss, Payne appears to frame these alleged deprivations as ineffectiveness claims. As such, the Court will address them in conjunction with Payne's Claim XIII, alleging unconstitutional ineffectiveness at both guilt and sentencing stages.

Petitioner's Claim XIII alleges ineffectiveness of counsel at both the guilt and sentencing stages of trial, in violation of his rights secured by the Sixth Amendment. Payne seeks to establish that his trial counsel were ineffective within the meaning of *Strickland,* that is, ineffective so as to undermine confidence in the outcome. *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068. In support, Payne points to Morchower's failure to read certain available sources of impeachment so that he could effectively discredit Robert Smith's testimony for the prosecution. Further, petitioner alleges Donald Ford's failure to prepare for certain predictable inconsistencies in the testimony of the only eyewitness for the defense, Frank Clements. Finally, Payne contends that his trial counsel were totally unprepared for the sentencing phase of the trial in that they failed to conduct any meaningful pretrial investigation in preparation for sentencing.

Respondent moves for dismissal of Claim XIII first on the basis that various specific allegations within Claim XIII are procedurally barred. As for those claims that, in respondent's view, are not barred, respondent contends that at both phases of trial Payne's counsel made decisions that reflect sound strategy rather than incompetence.

 Upon review of the trial transcript and the state court habeas hearing, which dealt in large part with petitioner's ineffectiveness claims, and without passing on respondent's argument as to procedural bar, the Court concludes that Payne's trial counsel was not ineffective within the meaning of *Strickland.* Again, the Court emphasizes that, in considering Claim XIII, it is not its role to inquire whether it would have defended petitioner in the same way. *Spencer,* 18 F.3d 229. Rather, it is the Court's task to determine whether Payne's counsels' performance was reasonable under "prevailing professional norms." *Id.* See *Kimmelman v. Morrison,* 477 U.S. 365, 374, 106 S.Ct. 2574, 2582, 91 L.Ed.2d 305 (1985) (essence of ineffectiveness claim is that counsel's errors "so upset the adversarial balance between defense and prosecution" that trial was rendered unfair and verdict rendered suspect); *Pruett v. Thompson,* 996 F.2d

1560, 1574 (4th Cir.1993) (counsel's performance not ineffective under "objectively reasonable" standard). Based on the trial transcript and counsel's testimony at the state habeas hearing, the Court is satisfied that petitioner has failed to establish that counsel's representation fell below an objective standard of reasonableness, *Strickland,* 466 U.S. at 688, 104 S.Ct. at 2065, or that a reasonable probability existed that the factfinder would have had. a reasonable doubt respecting guilt. *Id.* at 694, 104 S.Ct. at 2068. The Court dismisses Claim XIII.

██ In his next viable claim, Claim IX, petitioner seeks to establish that the Commonwealth improperly used at the sentencing stage the testimony of the state forensic clinical psychologist, Dr. Arthur Centor. Prior to trial, Payne raised the issue of competency to stand trial, and pursuant to a court order, Dr. Centor conducted an examination of Payne without the presence of counsel. According to petitioner, during the course of the examination he informed Dr. Centor that he did not understand his warnings as to his right to remain silent, and he denied having any knowledge whatsoever of the crime with which he was charged. Dr. Centor's testimony at the sentencing stage involved Payne's future dangerousness, the vileness of the murder with which he was charged, and the alleged depravity of Payne's mind.

Petitioner submits that, under *Estelle v. Smith,* 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981), the Commonwealth impermissibly treated Payne's exercise of his right to raise a pre-trial competency issue as a waiver of his Fifth Amendment right against self-incrimination and his Sixth Amendment right to counsel for purposes of the trial. Petitioner complains that, had Dr. Centor's testimony not been admitted into evidence, the jury may not have concluded on vileness and may not have fixed the penalty at death.

Respondent seeks dismissal of Claim IX on the basis that, contrary to the facts in *Estelle,* Payne requested a competency examination thereby waiving any Fifth and Sixth Amendment privilege under *Buchanan v. Kentucky,* 483 U.S. 402, 107 S.Ct. 2906, 97

L.Ed.2d 336 (1987). Respondent attempts to characterize the allegedly offending testimony as the type of psychiatric testimony sanctioned by the Supreme Court in *Barefoot v. Estelle*, 463 U.S. 880, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983).

In considering Claim IX, this Court observes that the circumstances giving rise to the Supreme Court's determination in *Estelle v. Smith*, 451 U.S. 454, 101 S.Ct. 1866, that the death penalty could not stand, differ considerably from the facts occasioning the instant Claim IX. In *Estelle*, the defendant was not informed of his right to remain silent at the pretrial psychiatric examination. Moreover, the psychiatric examination of the petitioner in *Estelle* was ordered even though defense counsel had not put into issue the defendant's competency to stand trial or his sanity at the time of the offense of conviction. *Id.* at 457, 101 S.Ct. at 1870. In addition, it would appear that defense counsel was not notified about the scope, or even the existence of the examination. In *Estelle*, despite an order requiring the prosecution to disclose the witnesses it planned to use at the guilt and penalty stages, the examining psychiatrist was called to testify at the penalty stage without having been so listed. The trial judge denied a defense motion to exclude the psychiatrist's testimony on the ground of noncompliance with the order. The Court held:

> A criminal defendant, who neither initiates a psychiatric evaluation nor attempts to introduce any . psychiatric evidence, may not be compelled to respond to a psychiatrist if his statements can be used against him at a capital sentencing proceeding. Because respondent did not voluntarily consent to the pretrial psychiatric examination after being informed of his right to remain silent and the possible use of his statements, the State could not rely on what he said to [the psychiatrist] to establish his future dangerousness.

*Id.* at 468, 101 S.Ct. at 1876.

In *Buchanan*, 483 U.S. 402, 107 S.Ct. 2906, the Court stated that its holding in *Estelle*

"logically leads to another proposition: if a defendant requests such [a psychiatric] evaluation or presents psychiatric evidence, then, at the very least, the prosecution may rebut this presentation with evidence from the reports of the examination that the defendant requested." *Buchanan*, 483 U.S. at 422, 107 S.Ct. at 2917. However, while defense counsel in *Buchanan* joined with the prosecution in moving for an examination of the defendant, "petitioner's entire defense strategy was to establish the 'mental status' defense of extreme emotional disturbance." *Id.* at 423, 107 S.Ct. at 2918. Moreover, the *Buchanan* Court observed in a footnote that, "[o]nce more it is necessary to repeat that [the psychiatrist's] examination had as its purpose the determination whether petitioner should be committed for psychiatric treatment, not whether he was competent to stand trial." *Id.* at 423 n. 20, 107 S.Ct. at 2918 n. 20. In so far as the examination in *Buchanan* was for the purposes of determining eligibility for psychiatric treatment rather than competency to stand trial, and considering that the petitioner's defense in *Buchanan* rested entirely on extreme emotional disturbance, the fact that Payne put his competency at issue does not necessarily compel the same conclusion on this issue as that reached by the Court in *Buchanan*.

Therefore, while the Court is of the opinion that Payne's petition as it relates to Dr. Centor's testimony cannot be granted on the basis of *Estelle*, nor is the Court persuaded that the holding in *Buchanan* necessarily supports dismissal of Claim IX. However, just as the Court in *Buchanan* was guided to its conclusion by the substance of the testimony regarding the psychiatric report, so too is this Court guided by the content of Dr. Centor's testimony. Upon review of that testimony, it is clear that Dr. Centor's testimony "set forth his general observations about the mental state of petitioner but [did] not [describe] *any* statements by petitioner dealing with the crimes for which he was charged." *Buchanan*, 483 U.S. at 423, 107 S.Ct. at 2918.[4] In fact, Dr. Centor testified that he based his opinion on Payne's "past

---

4. Dr. Centor did testify, however, that Payne denied any knowledge of the offenses with which

he was charged. (Sent. Tr. at 86).

history going back to the age of 10, going through previous convictions, other related difficulties with the law, and the circumstances of the present alleged crime." (Sent. Tr. at 77). In substance, therefore, the Court considers Dr. Centor's testimony as expert testimony of the kind approved by the Supreme Court in *Barefoot v. Estelle,* 463 U.S. 880, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983). *See Estelle v. Smith,* 451 U.S. 454, 473, 101 S.Ct. 1866, 1878, 68 L.Ed.2d 359 (1981) (Court "in no sense disapproving the use of psychiatric testimony bearing on future dangerousness"). Thus, the Court concludes that petitioner's Claim IX fails to establish that his Fifth Amendment rights were violated when Dr. Centor testified in the sentencing stage. The Court further determines that Payne's argument that his Sixth Amendment rights were violated by Dr. Centor's testimony is directly and adversely controlled by the Supreme Court's discussion of the scope of the Sixth Amendment in *Buchanan,* 483 U.S. at 424, 107 S.Ct. at 2918.

 Finally, petitioner's Claim XIV alleges that the Virginia courts unconstitutionally denied him a fair adjudication of his state habeas corpus petition. Payne argues that his due process rights were violated by the state court's erroneous application to his petition of the procedural bars established by *Hawks v. Cox,* 211 Va. 91, 175 S.E.2d 271 (1970) and *Slayton v. Parrigan,* 215 Va. 27, 205 S.E.2d 680 (1974), *cert. denied,* 419 U.S. 1108, 95 S.Ct. 780, 42 L.Ed.2d 804 (1975). Further, petitioner complains that the habeas court improperly precluded him from developing a full record at the plenary hearing. Payne characterizes the habeas court's denial of his petition as "a complete dereliction of the court's duty to make reasoned findings of fact and conclusions of law . . . ." In addition, petitioner maintains that the Virginia Supreme Court's denial and dismissal of his petition for appeal violated due process.

In that the state habeas proceedings were neither procedurally unconstitutional nor "inadequate for the ascertainment of truth," *Townsend v. Sain,* 372 U.S. 293, 316, 83 S.Ct. 745, 759, 9 L.Ed.2d 770 (1963), the Court finds that the state habeas proceedings were both full and fair, and that Claim XIV must be dismissed. With respect to the state habeas court's determination of the facts and credibility of petitioner's witnesses, the Court notes that "Title 28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." *Lonberger,* 459 U.S. 422, 434, 103 S.Ct. 843, 850, 74 L.Ed.2d 646 (1983). Because the Court is not satisfied that Payne has made a sufficient showing to give rise to an evidentiary hearing under the standards set forth in *Townsend,* supra, petitioner's motion for such a hearing must also be denied.

For the foregoing reasons, respondent's motion to dismiss will be granted as to each of petitioner's claims, and petitioner's motion for evidentiary hearing is denied.