114 F.Supp.2d 497 (2000)
Michael D. HILLMAN, Petitioner,
v.
George M. HINKLE, Respondent.
No. Civ.A. 99-219-AM.
United States District Court, E.D. Virginia, Alexandria Division.
September 25, 2000.
*498 *499 Michael D. Hillman, Haynesville, VA, pro se.
Kathleen B. Martin, Assistant Attorney General, Richmond, VA, Bethesda, MD, for respondent.

MEMORANDUM OPINION
LEE, District Judge.
Now before the Court is respondent's Motion to Dismiss this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner, a Virginia inmate proceeding pro se, has been informed of the potentially dispositive nature of this motion pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir.1975) and has filed responsive materials. The Court finds the facts and legal arguments sufficiently clear that an evidentiary hearing and appointment of counsel are unnecessary. This matter now is ready for disposition. For the following reasons, respondent's motion must be granted and this petition must be dismissed.

I.
Petitioner Michael D. Hillman ("Hillman") is attacking the validity of a final judgment of a jury trial at the Circuit Court of Prince William County on October 27, 1993 for felony murder and distribution of heroin. The evidence presented at trial was summarized by the Court of Appeals of Virginia as follows:
On January 31, 1993, [Hillman] bought ten bags of high grade heroin in Washington, D.C. for his own use and for sale to others. At 7:30 p.m., Willie Ordonez (Ordonez) called Suzann Szabolsoky (Szabolsoky) and requested to buy heroin. Szabolsoky contacted [Hillman], and [Hillman] sold her a bag of heroin at 9:00 p.m. at her house. [Hillman], who stayed only a few minutes, left before Ordonez arrived. Yvonne Johnson (Johnson) heard Szabolsoky tell [Hillman] that the heroin was for Ordonez, and [Hillman] warned her to tell Ordonez "to take it easy because [the heroin was] some powerful stuff." Thirty to forty-five minutes later, Szabolsoky sold the heroin to Ordonez; gave him some cotton, which is used for injecting heroin; and left him in the kitchen with a syringe. After fifteen minutes, Ordonez went into the living room, drank a beer, fell asleep on her sofa, and died. The cause of death was morphine poisoning.[1]
Hillman v. Commonwealth, No. 2194-93-4, 1995 WL 293064, *1 (Va.App. May 16, 1995) (unpublished opinion). Hillman's counsel argued on appeal that the trial court erred in failing to strike a juror for cause, that the evidence was insufficient for the felony murder conviction, and that he was entitled to a new trial based on after-discovered evidence. The Court of Appeals of Virginia affirmed the conviction, and the Supreme Court of Appeals denied Hillman's subsequent petition for appeal. Hillman v. Commonwealth, No. 951092 (Va. Oct. 24, 1995).[2]
*500 Hillman filed a petition for a writ of habeas corpus in the Circuit Court of Prince William County while his direct appeal was pending, and the trial court stayed the petition until the appellate process was completed. The stay was lifted on September 29, 1997, and Hillman was granted leave to file an amended petition. On April 20, 1998, respondent's motion to dismiss was granted. Hillman v. Charles Thompson, Warden, No. 33388 (Va.Ct. App. April 30, 1998). Hillman's petition for appeal to the Supreme Court of Virginia was likewise denied. Hillman v. Charles Thompson, Warden, No. 981547 (Va. Oct. 30, 1998).
On February 6, 1999, Hillman filed the instant petition pro se, alleging that:
1. The evidence was insufficient to support a conviction for felony murder;
2. His conviction was based on coerced testimony from a witness who later recanted;
3. The prosecution failed to divulge the exculpatory evidence that a witness had an affair with a police officer and that the police had made deals with three witnesses; and
4. His attorney was ineffective because he failed to interview witnesses before trial, failed to expose witness bias, failed to object to evidence regarding Hillman and drugs, and failed to do proper legal research.
Hillman has raised all claims before the Supreme Court of Virginia, either on direct appeal or through his habeas petition, and the court summarily dismissed the claims. Therefore all four claims must be reviewed on the merits.

II.
When a state court has addressed the merits of a claim raised in a federal habeas petition, the federal court cannot grant the petition based on the claim unless the state court's adjudications are contrary to, or an unreasonable application of, clearly established federal law, or are based on an unreasonable determination of the facts. See 28 U.S.C. § 2254(d).[3] The evaluation of whether a state decision is "contrary to" or "an unreasonable application of" federal law is based on an independent review each standard. See Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (April 18, 2000) ("T.Williams").
A state court determination meets the "contrary to" standard "if the state court `arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts.'" Evans v. Smith, 220 F.3d 306, 312 (4th Cir.2000) (quoting T. Williams, 120 S.Ct. at 1523) (alteration in original). Under the "unreasonable application" clause, the writ should be granted if the federal court finds that the "state court `identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" See Evans, 220 F.3d at 312-13 (quoting T. Williams, 120 S.Ct. at 1523) (alteration in original). Moreover, this standard of reasonableness is an objective one. See T. Williams, 120 S.Ct. at 1524.
Whether a state court's application of federal law to a set of facts is an objectively reasonable application of clearly established *501 federal law thus will depend upon the specific facts of the case as they were developed in the state court proceedings. In the instant case, the state court's decision clearly was not contrary to this clearly established law. The remaining question is whether the state court's interpretation was unreasonable in the light of Supreme Court jurisprudence.

III.

A. Claim (1)

Hillman argues that the evidence was insufficient to support his conviction for felony murder. The standard of review for an insufficient evidence claim is rigorous. See Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); see also McMillan v. Pennsylvania, 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986). The question before the Court is, "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319, 99 S.Ct. 2781; Inge v. Procunier, 758 F.2d 1010 (4th Cir.1985) cert. denied, 474 U.S. 833, 106 S.Ct. 104, 88 L.Ed.2d 85 (1985); Goldsmith v. Witkowski, 981 F.2d 697, 701 (4th Cir.1992), cert. denied, 509 U.S. 913, 113 S.Ct. 3020, 125 L.Ed.2d 709, (1993). And, importantly, the Court may not question the fact finder's determinations of witness credibility. See Sumner v. Mata, 455 U.S. 591, 591-93, 102 S.Ct. 1303, 71 L.Ed.2d 480 (1982) (per curiam) (Section 2254(d) plainly requires a federal habeas court to presume factual findings made by a state court after a full and fair hearing on the merits to be correct unless "not fairly supported by the record"); Marshall v. Lonberger, 459 U.S. 422, 434, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983) (Section "2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them."); United States v. Saunders, 886 F.2d 56 (4th Cir.1989); Pigford v. United States, 518 F.2d 831 (4th Cir.1975).
Hillman alleges that because the witness Lauth's testimony was not credible, no rational trier of fact could have found the essential elements for felony murder. He argues that the evidence establishes that he had no knowledge of Szabolsoky's intent to sell the heroin until his conduct was completed. However, as stated above, under the standard for evaluating the sufficiency of the evidence, the trier of fact's determination of credibility cannot be redetermined by the federal court. Lauth's testimony provides sufficient evidence for a rational trier of fact to find Hillman guilty of felony murder. The Supreme Court of Virginia's dismissal of claim (1) therefore was not an unreasonable application of federal law.

B. Claim (2)

Hillman relies upon Lauth's after the fact recantation of her testimony to argue that her testimony was coerced and perjured. It is a well-settled principle that "a conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976) (footnote omitted); United States v. Bagley, 473 U.S. 667, 678-79, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). In order to prevail, however, a petitioner bears the burden of demonstrating that the witness gave false testimony, and must show that both the witness and the prosecutor "knew the testimony in question was false." Stockton v. Virginia, 852 F.2d 740, 749 (4th Cir.1988) (quoting Thompson v. Garrison, 516 F.2d 986, 988 (4th Cir.), cert. denied, 423 U.S. 933, 96 S.Ct. 287, 46 L.Ed.2d 263 (1975)); Payne v. Thompson, 853 F.Supp. 932, 936 (E.D.Va.1994). Recantation of a witness's testimony after the fact is not sufficient. Id. Moreover, a prosecutor's mere suspicion about testimony is not enough. See, e.g., Bank of Nova Scotia v. United States, 487 U.S. 250, 261, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988) ("Although the Government may have [] *502 doubts about the accuracy of certain aspects of [evidence], this is quite different from having knowledge of falsity.").
According to Hillman, the fact that the prosecutors threatened to prosecute Lauth if she did not testify is in and of itself sufficient evidence to show that the prosecutor was aware that the witness was committing perjury. This bare assertion is not supported by the facts, and in fact Lauth testified on cross-examination that she had been a police informant and the prosecutors told her "If you cooperate with us and be honest and truthful, it will be easier for you in the long run." Hillman therefore has failed to establish that the prosecutors knew that Lauth was lying, and the Supreme Court of Virginia reasonably interpreted federal law by dismissing this claim.

C. Claim (3)

Hillman argues that the prosecutor failed to turn over the exculpatory evidence that Lauth had an affair with a police officer. It is well settled that the prosecution's suppression of evidence favorable to the accused violates due process where there is reasonable probability that result of proceeding would have been different had that evidence been disclosed to defense. See United States v. Bagley, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985); Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). This standard applies whether the defense has made specific, general, or even no request for disclosure of exculpatory evidence. Id. at 682, 105 S.Ct. 3375; see also United States v. Agurs, 427 U.S. 97, 103-07, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976) (refining rule of disclosure announced in Brady, and defining three situations in which nondisclosure of exculpatory evidence violates due process); Chavis v. North Carolina, 637 F.2d 213 (4th Cir.1980); Sennett v. Sheriff of Fairfax County, 608 F.2d 537 (4th Cir.1979). The government's duty to disclose applies whether the information is in the hands of the prosecutor or the police. Boone v. Paderick, 541 F.2d 447 (4th Cir.1976), cert. denied, 430 U.S. 959, 97 S.Ct. 1610, 51 L.Ed.2d 811 (1977). Disclosure is required even where the information is in the public record. Anderson v. South Carolina, 709 F.2d 887 (4th Cir. 1983).
There must be a reasonable probability that the disclosure of evidence would have changed result sufficient to undermine confidence in the outcome of the trial, however. Bagley, 473 U.S. at 682, 105 S.Ct. 3375; Jean v. Rice, 945 F.2d 82 (4th Cir.1991) (concluding that the failure to turn over audio tapes and accompanying records of hypnosis session is a Brady violation); McDowell v. Dixon, 858 F.2d 945 (4th Cir.1988) (finding that the prosecutor's failure to turn over exculpatory identification evidence created a reasonable probability that outcome would have been different where no physical evidence linked defendant to crime), cert. denied, 489 U.S. 1033, 109 S.Ct. 1172, 103 L.Ed.2d 230 (1989); see also Maynard v. Dixon, 943 F.2d 407 (4th Cir.1991) (finding the exculpatory evidence was not material), cert. denied, 502 U.S. 1110, 112 S.Ct. 1211, 117 L.Ed.2d 450 (1992); United States v. Curtis, 931 F.2d 1011 (4th Cir.) (same), cert. denied, 502 U.S. 881, 112 S.Ct. 230, 116 L.Ed.2d 186 (1991); United U.S. v. Wilson, 901 F.2d 378 (4th Cir.1990) (same); Brown v. Dixon, 891 F.2d 490 (4th Cir.1989) (determining that the refusal to allow defense counsel to view crime scene was not prejudicial under Bagley), cert. denied, 495 U.S. 953, 110 S.Ct. 2220, 109 L.Ed.2d 545 (1990); United States v. Powell, 886 F.2d 81 (4th Cir.1989) (holding that, although the government has a duty to make good faith effort to discover and disclose alleged Brady material, a failure to abide by this requirement will not require reversal where defendant unable to show information sought was material), cert. denied, 493 U.S. 1084, 110 S.Ct. 1144, 107 L.Ed.2d 1049 (1990).
When the reliability of a witness may be determinative of an accused's guilt or innocence, the non-disclosure of evidence that affects credibility is a denial of due process. Giglio v. United States, *503 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972) (concluding that the failure to disclose a promise made to prosecution's key witness violated Brady); United States v. Kelly, 35 F.3d 929, 937 (4th Cir.1994) (finding that a reasonable probability existed that disclosure of an affidavit reflecting the credibility of a witness would have changed result of trial); Fitzgerald v. Thompson, 943 F.2d 463 (4th Cir.1991) (determining that there was no reasonable likelihood that the disclosure of a witnesses's additional convictions would have affected the outcome), cert. denied, 502 U.S. 1112, 112 S.Ct. 1219, 117 L.Ed.2d 456 (1992). In addition, impeachment evidence falls within dictates of Brady Jean v. Rice, 945 F.2d 82, 87 n. 9 (4th Cir.1991).
In regard to Brady and impeachment evidence, "there is never a real Brady violation unless the non-disclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." Srickler v. Greene, 527 U.S. 263, 281, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999). There are three components of a true Brady violation: 1) the evidence at issue must be favorable to the accused; 2) either because it is exculpatory, or because it is impeaching; and that evidence must have been suppressed by the State, either willfully or inadvertently; and, 3) prejudice must have ensued. See id.
The evidence at issue in this action is clearly "favorable" to the defendant. Specifically, the prosecutor failed to turn over the exculpatory evidence that Lauth (A key prosecution witness) had an affair with a police officer. Accordingly, the first prong set out in Strickler is satisfied. The evidence is "favorable" to the petitioner because it certainly has impeachment value to indicate to the finder of fact Lauth's potential bias. Thus, the second prong in Strickler is satisfied.
The third prong set forth in Strickler, however, is not met by the petitioner. Unarguably, if this information was known to the petitioner and his counsel, it would have been useful to impeach Lauth.[4] This being said, it still can not be concluded that the petitioner was prejudiced by this inadvertent non-disclosure. The key is that another witness, Suzann Szabolsoky, testified that the petitioner sold her the drugs and warned her "to take it easy because [the heroin was] some powerful stuff." The testimony of Szabolsoky alone was enough to support the jury returning a guilty verdict. Accordingly, it can not be said this inadvertent non-disclosure prejudiced the petitioner under Giglio and Brady. The Supreme Court of Virginia therefore did not unreasonably interpret the Giglio and Brady standard for when evidence relating to a witness's credibility must be disclosed.

D. Claim (4)

In considering an ineffective assistance of counsel claim, a court must determine (1) "whether, in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance," Strickland v. Washington, 466 U.S. 668, 690, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (defining ineffective assistance of counsel as falling below an objective standard of reasonableness; specifying a strong presumption of competence and deference to attorney judgment), and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S.Ct. 2052. "The petitioner must show both deficient performance and prejudice; the two are separate and distinct elements of an ineffective assistance claim." Spencer v. Murray, 18 F.3d 229, 232-33 (4th Cir.1994). Moreover, "[i]f there is no prejudice, a court need not review the reasonableness of counsel's performance." Quesinberry v. Taylor, 162 F.3d 273, 278 (4th Cir.1998). Finally, *504 "[j]udicial scrutiny of counsel's performance must be highly deferential," Strickland, 466 U.S. at 689, 104 S.Ct. 2052, and the Court must "presume that challenged acts are likely the result of sound trial strategy." Spencer, 18 F.3d at 233.
The Fourth Circuit has held that an attorney's tactical error or failure to raise an objection must be incompetent and prejudicial. See Fitzgerald v. Thompson, 943 F.2d 463 (4th Cir.1991) (tactical decision was neither incompetent nor prejudicial), cert. denied, 502 U.S. 1112, 112 S.Ct. 1219, 117 L.Ed.2d 456 (1992); Brown v. Dixon, 891 F.2d 490 (4th Cir.1989) (counsel's presentation of inconsistent defenses was not ineffective), cert. denied, 495 U.S. 953, 110 S.Ct. 2220, 109 L.Ed.2d 545 (1990); Williams v. Kelly, 816 F.2d 939 (4th Cir.1987) (failure to move to strike prosecution's case and advice to defendant to testify was not ineffective); Inge v. Procunier, 758 F.2d 1010 (4th Cir.) (failure to object to exhibition of shotguns, whether deliberate or inadvertent, was not ineffective), cert. denied, 474 U.S. 833, 106 S.Ct. 104, 88 L.Ed.2d 85 (1985); Wyatt v. United States, 591 F.2d 260 (4th Cir.1979) (not professionally unsound to advise bench trial); Kibert v. Peyton, 383 F.2d 566 (4th Cir.1967) (failure to raise venue objection).
Moreover, courts are reluctant to second guess the tactics of trial lawyers. See Goodson v. United States, 564 F.2d 1071, 1072 (4th Cir.1977); see also Stamper v. Muncie, 944 F.2d 170 (4th Cir.1991) (petitioner's claims amounted to nothing more than "Monday morning quarterbacking"); McDougall v. Dixon, 921 F.2d 518 (4th Cir.1990) (court would not second guess strategy behind counsel's closing argument), cert. denied, 501 U.S. 1223, 111 S.Ct. 2840, 115 L.Ed.2d 1009 (1991); Clozza v. Murray, 913 F.2d 1092, 1097 (4th Cir.1990) (concession of guilt was a reasonable strategy under the circumstances), cert. denied, 499 U.S. 913, 111 S.Ct. 1123, 113 L.Ed.2d 231 (1991).
Hillman vehemently argues that his defense counsel was completely unprepared, failed to interview witnesses, failed to research the law and object to evidence that should not have been admitted, and failed to expose a witness's bias. With regard to Hillman's claim that his counsel failed to interview prosecution witnesses, Hillman's counsel submits an affidavit stating that he attempted to contact these witnesses but they refused to communicate with him. A witness is not the exclusive property of either government or defendant, and an accused is entitled to have access to any prospective witness. However, the witness may refuse to be interviewed. United States v. Walton, 602 F.2d 1176 (4th Cir.1979). Under the presumption that trial counsel's trial strategy is sound, it is clear that counsel's other decisions were not indicative of a deficient performance. Merely making mistakes is not sufficient to prove ineffective assistance of counsel. The Supreme Court of Virginia was not unreasonable in determining that Hillman's ineffective assistance of counsel claims had no merit.

IV.
For the foregoing reasons, respondent's Motion to Dismiss will be granted and this petition will be dismissed. An appropriate Order shall issue.
NOTES
[1] The evidence established that heroin changes into morphine within five minutes of being ingested and that morphine can stay in a person's system for as long as overnight.
[2] The Supreme Court of Virginia subsequently denied Hillman's petition for rehearing on January 19, 1996.
[3] 28 U.S.C. § 2254(d) provides:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim 
(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of United States; or
(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
[4] It should be pointed out, however, that Lauth was substantially impeached on cross-examination when it was revealed that she was a police informant and had lied about the last time she used heroin.